IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Stacy A. White, | ) | Civil Action No. 8:15-cv-01873-MGL-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB").  For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

On August 8, 2012, Plaintiff filed an application for DIB alleging disability beginning November 10, 2010.    [R. 151–54.]   The claim was denied initially and upon reconsideration by the Social Security Administration ("the Administration"). [R. 112–19; 122–28.]  Plaintiff filed a request for hearing before an administrative law judge ("ALJ"), and on December 6, 2013,  ALJ Jerry W. Peace conducted a hearing on Plaintiff's claims. [R. 58–108.]

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

On February 27, 2014, the ALJ issued his decision, finding Plaintiff not disabled. [R. 10–34.] At Step 1[2], the ALJ found Plaintiff last met the insured status requirements of the Social Security Act ("the Act") on June 30, 2011, and had not engaged in substantial gainful activity during the period from her alleged onset date of November 10, 2010, through her date last insured of June 30, 2011. [R. 12, Findings 1 & 2.] At Step 2, the ALJ found Plaintiff had the following severe impairments: gastroparesis, irritable bowel syndrome, major depressive disorder, generalized anxiety disorder and attention deficit hyperactivity disorder (ADHD). [R. 12, Finding 3.] The ALJ also found Plaintiff had a non-severe impairment of polycystic disease of the ovaries; a medically determinable impairment of obesity which was not severe; and insomnia due to mental disorder and hypersomnia. [R. 12–13.] The ALJ also found that fibromyalgia was not a medically determinable impairment on or before the last date insured. [R. 14.] At Step 3, the ALJ determined Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments. [R. 14, Finding 4.]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found that Plaintiff retained the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, I find that, through the date last insured, the claimant had the RFC to perform light work as defined in 20 CFR 404.1567(b) except that she could do only occasional stooping, crouching and kneeling and could never crawl, had to avoid concentrated exposure to environmental irritants and to chemicals; had to avoid concentrated use of moving machinery, and was limited to simple, routine, repetitive tasks.

---

[2]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

[R. 18, Finding 5.]  Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform her past relevant work as an insurance agent.  [R. 33, Finding 6.]  However, in light of Plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed.  [R. 33, Finding 10.]  Thus, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, at any time from November 10, 2010, the alleged onset date, through June 30, 2011, the date last insured.  [R. 34, Finding 11.]

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, which denied review on March 9, 2015.  [R. 1-6.]  Plaintiff commenced an action for judicial review in this Court on May 4, 2015.  [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ's decision is not supported by substantial evidence and contains legal errors warranting a reversal with the award of benefits and without remand to the Administration.  Or, in the alternative, Plaintiff seeks a remand for the "court" to fully consider all evidence of record and award benefits to Plaintiff.  [*See* Doc. 9.]  Specifically, Plaintiff contends the ALJ did not clearly state the reasons he denied Plaintiff's case; did not explain why he found the testimony of Plaintiff's husband not credible; and failed to appreciate the "judicially recognized fact" that Plaintiff alternated between good and bad days.  [*Id.*]

The Commissioner contends the ALJ's decision should be affirmed because there is substantial evidence of record that Plaintiff was not disabled within the meaning of the Act.  [*See* Doc. 10.]  Specifically, the Commissioner contends the ALJ's discussion and

findings for his RFC were comprehensive and detailed, and further evaluation of Plaintiff's husband's testimony was unnecessary as the ALJ found it cumulative and duplicative. [*Id.*] As a result, the Commissioner contends Plaintiff is not entitled to an award of benefits. [*Id.*]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963))("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court.  *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the

4

Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was

5

appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).   Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).   On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.   *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").   After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.   *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).   A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

6

determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[3]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[3]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect. *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability. 42 U.S.C. § 423(a). "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims). The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment. 20 C.F.R. § 404.1520. Through the fourth step, the burden of production and proof is on the claimant. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden

8

shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Grant*, 699 F.2d at 191. If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.  *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. § 404.1572(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* § 404.1572(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. *Id.* §§ 404.1574–.1575.

### B.  *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. *See id.* § 404.1521. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. § 423(d)(2)(B). The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not

9

fragmentize them"). Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments."). If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process." 42 U.S.C. § 423(d)(2)(B).

**C.**    ***Meets or Equals an Impairment Listed in the Listings of Impairments***

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. § 404.1509, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d).

**D.**    ***Past Relevant Work***

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). At this step of the evaluation, the ALJ compares the claimant's residual functional capacity[4] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work. 20 C.F.R. § 404.1560(b).

**E.**    ***Other Work***

---

[4]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a).

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy. *See Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); 20 C.F.R. § 404.1520(f)–(g).    To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").    Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[5]    20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *see also Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).    When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines. *Gory*, 712 F.2d at 931. In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.    20 C.F.R. § 404.1569a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform

---

[5]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs.  20 C.F.R. § 404.1569a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands. *Id.* Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing. § 404.1569a(c)(1).

specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  The ALJ may discount a treating physician's opinion if it is

unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. § 404.1527(c).  Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. § 404.1527(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. § 404.1527(d).  However, the ALJ is responsible for

13

making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 404.1517; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. § 404.1517.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the

14

ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs." *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).  The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable

15

> objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. § 404.1529(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.    Credibility

The ALJ must make a credibility determination based upon all the evidence in the record. Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria. *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique

16

advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Substantial Evidence**

Plaintiff argues that the ALJ decision does not contain a "succinct articulation" of the reasoning behind the denial of Plaintiff's claim. [Doc. 9 at 10.] Specifically, Plaintiff argues the ALJ did not consider the evidence as a whole; relied on two comments in denying Plaintiff's claim[6]; and improperly discounted the help Plaintiff receives from her husband and family members.  [*Id*. at 11.]   The Commissioner, on the other hand, argues the ALJ extensively discussed Plaintiff's testimony, her husband's testimony, and the medical evidence of record; and he engaged in a comprehensive review of the evidence of record and determined that Plaintiff retained the RFC to perform a range of light work.  [Doc. 10

---

[6] The two comments Plaintiff argues the ALJ relied on in denying her claims are as follows:

> Additionally, Dr. Hossain's and Dr. McCann's records frequently refer to her caring for her own three young children and babysitting other children, a physically and emotionally demanding activity. (Tr. Pg. 17).

> I find it significant that the claimant has actively participated in childcare of three young children and other children. Such activity is especially demanding and the claimant has done so without particular assistance. After the alleged onset date, she continues to drive, maintain personal hygiene, do some meal preparation and perform light housework. ( Tr. Pg. 28)

[Doc. 9 at 10–11.]

at 9, 13.]  The Court agrees with the Commissioner that substantial evidence supports the ALJ's decision.

### Discussion

Plaintiff has the burden to show that she has a disabling impairment.  *See Jolley v. Weinberger*, 537 F.2d 1179, 1181 (4th Cir.1976)(objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995) (*citing Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir.1992)(Plaintiff bears the burden of proof during the first four steps of the inquiry, while the burden shifts to the Commissioner for the final step).  Substantial evidence is defined as "... evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir.1984).  As previously noted, if the record contains substantial evidence to support the decision, this Court is required to uphold the decision, even should the Court disagree with the decision. *Blalock*, 483 F.2d at 775.

Although Plaintiff bore the burden of establishing her inability to perform work-related activities, she has failed to direct the Court to any evidence prior to the date last insured that would support greater limitations than those assessed by the ALJ. *See Craig*, 76 F.3d at 589 (stating that, where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court; the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir.1990) (holding that it is the Commissioner's

18

responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence); *Laws*, 368 F.2d at 642 (holding it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner, so long as the decision is supported by substantial evidence).  Thus, without a showing by Plaintiff that the Commissioner's decision is not supported by substantial evidence, the Court is bound to uphold the decision.

Contrary to Plaintiff's assertion, the ALJ did not merely rely on two statements in the 24-page decision to deny Plaintiff's claim.  The ALJ discussed the evidence of record and determined that "on or before the date last insured, [Plaintiff's] impairments of irritable bowel syndrome, gastroparesis, major depressive disorder, anxiety disorder, and ADHD did not have a negative effect upon [her] ability to perform light exertion with the additional limitations I have set forth" in the RFC.  [R. 18.]  By way of example, the ALJ made the following findings with respect to Plaintiff's limitations due to her impairments:

- I do not find claimant's alleged limitations for standing, walking and sitting to be credible or consistent with objective medical findings. She has had no positive findings in the lower extremities since the alleged onset date.  Exams have generally shown normal gait and station, no lower extremity edema, and normal motor strength, sensation and reflexes.  She uses no orthotic, prosthetic or assistive devices and no treatment source prescribed use of such a device.

- I find that on or before June 30, 2011, because of irritable bowel syndrome and gastroparesis, the claimant was restricted from strenuous exertion that required lifting/carrying of heavy weight.. . . I find that due to irritable bowel syndrome and gastroparesis, the claimant had postural and environmental limitations.  She was restricted to occasional stooping, crouching and kneeling and could never crawl.  She had to avoid concentrated exposure to environmental irritants and to chemicals; had to avoid concentrated use of moving machinery.

- I find that on or before June 30, 2011, the claimant was able to respond appropriately to changes in the work setting. She retained the ability to remember locations and work-like procedures. She was able to understand, remember and carry out short and simple instructions, but due to moderate limitation of concentration, persistence or pace as a result of symptoms of ADHD, major depressive disorder and anxiety disorder, she could not understand, remember and carry out detailed instructions. The claimant could attend to and perform simple tasks without special supervision for at least two-hour periods. She was able to understand normal work-hour requirements and to be prompt within reasonable limits. She was able to work in coordination with or proximity to others without being unduly distracted. The claimant retained the ability to make simple, work-related decisions. Her symptoms would not have interfered with satisfactory completion of a normal workday or workweek and would not have required an unreasonable number of rest or cooling off periods.

- She had the capacity to ask simple questions and request assistance from peers or supervisors. She had no limitation for ongoing interaction with the public, coworkers and supervisors. She was able to follow basic instructions from supervisors and could change appropriately in response to feedback from supervisors. She was able to sustain appropriate interaction with peers and coworkers without interference in work. The claimant was able to sustain socially appropriate work behavior, standards and appearance. She was able to respond appropriately to changes in a routine work setting. She had the ability to be aware of personal safety and avoid work hazards. She retained the capacity to travel to and from work using available transportation. She had the capacity to set realistic goals. With such limitations from major depressive disorder, anxiety disorder and ADHD, the claimant could meet the mental demands of unskilled work, defined as simple, routine, repetitive tasks.

[R. 18–19.]

After setting forth in detail much of the medical record evidence and explaining Plaintiff's and her husband's testimony, the ALJ evaluated the evidence of record and noted as follows:

- Claimant has received only conservative treatment for her impairments. No treating or examining source has recommended surgery and I find no documentation of the need for placement of a

20

gastric pacemaker.  She had only one three day psychiatric admission for medication adjustment.

•  Claimant did not seek or receive treatment from a gastroenterologist prior to July 2011.  There are other significant and unexplained gaps in her history of treatment, including a lack of treatment by mental health professionals between March 2011 and September 2013 and her failure to return to MUSC or to return to Dr. Wortham until October 2013.

•  Treatment sources did not consider that the mental impairments were severe enough to warrant referral to a mental health professional prior to 2013.  She has not had referrals to pain management or physical therapists.

•  The record also shows that conservative treatment has been generally successful in controlling symptoms when she has adhered to a prescribed treatment regimen.

[R. 29–30.]

Furthermore, upon considering the medical evidence of record, the ALJ explained that:

•  I assign some weight to Dr. Hossain's and Dr. Mouzon's GAF scores because they are consistent over a significant length of time and because they are consistent with other evidence showing a moderate severity of symptoms and limitations from mental impairments.

•  I find [husband's] testimony is generally cumulative and a reiteration of the claimant's testimony.

•  There are no decisions on disability by other governmental or non-governmental agencies.

[R. 31–32.]  And, the ALJ found Dr. Tollison's opinion that Plaintiff is unable to tolerate work pressures was entitled to little weight for numerous reasons, including but not limited to the fact that his statements as to impairment of concentration and focus are contradicted by his own findings on mental status exam and her knowledge and input into her own medication regimen, as well as the fact that his exam and the opinions he derived from

those findings were made more than two years after the date last insured and did not accurately reflect the severity of the impairments and limitations on or before June 30, 2011. [R. 31–32.]

Upon review of the record evidence, the ALJ's decision, and Plaintiff's arguments, the Court finds the ALJ considered all relevant evidence in the record, including medical history, medical signs, laboratory findings, lay evidence, and medical source statements during the relevant time period.  The ALJ's decision is also sufficiently explained so as to allow the Court to track the ALJ's reasoning and be assured that all record evidence was considered and to understand how the ALJ resolved conflicts in the evidence.  *See McElveen v. Colvin*, C/A No. 8:12–1340–TLW–JDA, 2013 WL 4522899, at *11 (D.S.C. Aug. 26, 2013).  The Court finds no merit in Plaintiff's argument that the ALJ merely relied on two comments to deny her claim.

Further, Plaintiff incorrectly frames the ALJ's treatment of her husband's testimony as failing to specify why he did not find it credible.  The ALJ found Plaintiff's husband's testimony to be merely cumulative of her own testimony which he found to be contradicted by, among other things, her husband's own description of her ability to perform a wider range of daily activities than Plaintiff described;  by her ability to continue to drive, maintain personal hygiene, do some meal preparation and perform light housework after the alleged onset date; by the fact that she received only conservative treatment for her impairments; by the fact that no treating or examining source recommended surgery and there was no documentation of the need for placement of a gastric pacemaker; and by the fact that Plaintiff had only one three-day psychiatric admission for medication adjustment.  [R. 28–29.]  Consequently, the ALJ was not  required to provide any further discussion of the

testimony. *See Plowden v. Colvin*, No. 1:12–cv–2588–DCN, 2014 WL 37217 at *18 (D.S.C. Jan. 6, 2014) ("Where a lay witness's testimony merely repeats the allegations of a plaintiff's own testimony and is likewise contradicted by the same objective evidence discrediting the plaintiff's testimony, specific reasons are not necessary for dismissing the lay witness's testimony.").

Based on the above, the Court cannot find that the ALJ's decision is not supported by substantial evidence based merely on Plaintiff's challenge to the ALJ's consideration of the evidence as a whole, including her husband's testimony. Plaintiff does not challenge the weight assigned to the medical evidence of record, the RFC findings, or the vocational expert's testimony. Accordingly, the Court declines to remand based on Plaintiff's "substantial evidence" arguments.[7]

**Applicability of *Bauer v. Astrue***

Plaintiff makes an inartfully articulated argument challenging the ALJ's decision based on the premise of a "judicially recognized fact that disabled persons alternate between good and bad days." [Doc. 9 at 12.] Plaintiff argues that the ALJ "bisects" Plaintiff's physician visits from November 2010 and July 2013 by her date last insured. [*Id*.] Plaintiff contends that, according to *Bauer v. Astrue,* 532 F.3d 606 (7th Cir. 2008), the "ability for a person to dress appropriately, prepare meals, shop, and care for one's self and perhaps another individual does not mean that person can work on a full-time basis." [*Id*. at 13.] The Court finds no merit in Plaintiff's position.

---

[7]Because this case is not subject to remand, the Court declines to address Plaintiff's request for an award of benefits.

As an initial matter, a Plaintiff seeking DIB must establish the presence of a disability prior to her last date insured; and, medical evidence produced after the date last insured is generally admissible if such evidence "permits an inference of linkage with the claimant's pre-[date last insured] condition." *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 341 (4th Cir. 2012). Thus, the ALJ's decision to bifurcate his discussion of Plaintiff's physician visits by her date last insured is consistent with the regulations. Further, Plaintiff makes no suggestion of a linkage between the severity of her impairments pre and post date last insured. Accordingly, the Court finds no error here.

Second, the Court does not follow Plaintiff's suggestion that the Seventh Circuit somehow created a "judicially recognized fact that disabled persons alternate between good and bad days." Plaintiff neither suggests nor argues the effect such a "fact" would have on the ALJ's findings. And, even if such a "judicially recognized fact" was established in *Bauer*, the Seventh Circuit did not require a finding of disability based solely on this fact. To the contrary, the ALJ is still required to conduct the five-step evaluation process established by the Administration. In *Bauer*, the claimant appealed the affirming by the district court of her denial of benefits by the Administration. The claimant alleged disability by virtue of having bipolar disorder and argued that ALJ improperly applied the Treating Physician Rule in determining that she could hold down a full-time job. *Id*. at 607–08. Upon review, the Seventh Circuit found that "[g]iven that there were two treating physicians, that they were both specialists in psychiatric disorders, and that they examined the plaintiff over a period of years, the checklist required the administrative law judge to give great weight to their evidence unless it was seriously flawed." *Id*. at 608. The *Bauer* court found that the ALJ's decision suggested a lack of understanding of bipolar disorder

24

in that he gave little weight to the opinion of Plaintiff's treating physicians (that Plaintiff could not work full-time) based on a number of "hopeful" comments made in the physician's treating notes. *Id.* The Court went on to state that "[a] person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days; that is true of the plaintiff in this case." *Id.*

Contrary to the *Bauer* decision, Plaintiff was not diagnosed with bipolar disorder and has not presented any opinion of a treating physician that determined Plaintiff was unable to persist in full-time employment during the relevant time period. The ALJ specifically noted that there were significant and unexplained gaps in Plaintiff's treatment history, including a lack of treatment by mental health professionals between March 2011 and September 2013. [R. 29.] Additionally, the ALJ noted that treatment sources did not consider Plaintiff's mental impairments severe enough to warrant referral to a mental health professional prior to 2013. [R. 30.] In 2013, Dr. Tollison opined that Plaintiff was unable to tolerate work pressures, stresses, and demand situations. [*Id.*] The ALJ, however, gave Dr. Tollison's opinion little weight based on his consideration of the factors outlined in 20 C.F.R. § 404.1527(c)(1)-(5), ("Treating Physician Rule"):

- The opinion is not consistent with and is contradicted by findings of treating sources, including those of Dr. McCann and Dr. Hossain.

- The opinion is not consistent with the longitudinal record.

- Dr. Tollison gave minimal or no clinical findings to support the opinion. In Dr. Tollison's own words, she was capable of managing her own funds and he estimated that intellectual functioning fell within the average range. He also obtained essentially normal mental status exam findings as to cognition.

- His statements as to impairment of concentration and focus are contradicted by his own findings on mental status exam and her knowledge and input into her own medication regimen.

- Dr. Tollison has no treatment relationship with the claimant and saw the claimant only once at the request of the claimant's attorney and for the purpose of furthering her claim for disability benefits.

- Dr. Tollison relied on incorrect information from the claimant, i.e., that she had a diagnosis of Crohn's disease, that she had gained 65 pounds, and that she was under the long-term care of a psychiatrist.

- Dr. Tollison's exam and the opinions he derived from those findings were made more than two years after the date last insured and do not accurately reflect the severity of the impairments and limitations on or before June 30, 2011.

[R. 31.]

While Plaintiff does not directly challenge the ALJ's weighing of Dr. Tollison's opinion, the Court notes that the ALJ here, unlike the ALJ in *Bauer*, clearly articulated his consideration of the Treating Physician Rule and did not merely discount the opinion based on "hopeful comments." Considering the logical explanation provided by the ALJ regarding the weight assigned to Dr. Tollison's opinion in light of the Treating Physician Rule, the Court does not find remand necessary.

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

June 23, 2016                          s/Jacquelyn D. Austin
Greenville, South Carolina            United States Magistrate Judge